## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: EVOLVE BANK & TRUST CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 2:24-md-03127-SHL-cgc  Judge Sheryl H. Lipman |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

I.    **INTRODUCTION**

Plaintiffs Samantha Walker, Steven Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason Shefa, and Lisa Adewole, individually and on behalf of all others similarly situated ("Class Members" or "putative Class Members"), respectfully request that the Court grant preliminary approval of the proposed Class Settlement and submit this memorandum in support of their unopposed motion for preliminary approval of the Class Settlement attached hereto as **Exhibit 1**, resolving their claims against all Defendants, including Defendant Evolve Bank & Trust ("Defendant" or "Evolve"), in the above-captioned class action, on a nationwide basis.[1] Given that the Parties have reach a proposed Settlement, Plaintiffs moreover request a stay of all proceedings in this action outside of the Settlement approval process.

Specifically, Plaintiffs request an order (1) granting preliminary approval of the Settlement; (2) certifying the Class for the purpose of the Settlement pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (3) ordering the Settlement Administrator to direct and issue notice

---

[1] Capitalized terms shall carry the meaning ascribed to them in the Class Settlement Agreement unless otherwise noted herein.

to the Class under the terms of the Settlement Agreement; (4) appointing Samantha Walker, Steven

Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava,

Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason

Shefa, and Lisa Adewole as Class Representatives for the purpose of the Settlement; (5) appointing

J. Gerard Stranch, IV as Lead Counsel; Gary Klinger, Linda Nussbaum, Jeff Ostrow, James

Pizzirusso, Scott Poynter and Lynn Toops as Members of the Plaintiffs' Executive Committee and

Frank Watson of Watson Burns, PLLC as Liaison Counsel for the Settlement Class; and (6)

entering the Settlement schedule as proposed by the terms of the Settlement Agreement.

The Settlement provides Class Members an excellent result, and it provides substantial

relief comparable to or better than other settlements approved in similar data breach cases. If

approved, the Settlement will establish an $11,858,259.98 non-reversionary common fund, which

will be used to pay Valid Claims for Settlement Class Member Benefits, administrative expenses,

any Attorneys' Fees and Costs, and Class Representative Service Awards approved by the Court,

as well as any applicable taxes. Under the terms of the Settlement, participating Class Members

will have the option to select one of two Cash Payment options: (1) reimbursement of actual losses

incurred as a result of the Data Incident up to $3,000 per Claimant (i.e., Documented Losses

Payment), or (2) an estimated $20.00 pro rata Flat Cash Payment. The Settlement also provides

robust injunctive relief in the form of business practice changes designed to strengthen Evolve's

data security and prevent future data security incidents.

The Settlement was reached following well-informed, arm's length negotiations, including

a formal mediation assisted by a well-respected mediator and retired federal judge, Honorable

Diane M. Welsh. Given the risks and uncertainties of further, protracted litigation, the Settlement

represents an outstanding result for the Settlement Class that is well within the range of fair,

reasonable, and adequate, especially in light of Evolve's heightened regulatory and litigation risk arising from unrelated matters in connection with the bankruptcy of a former key service provider (Synapse Financial Technologies, Inc. ("Synapse")). Accordingly, Plaintiffs request that the Court enter an order preliminarily approving the Settlement, conditionally certifying the Settlement Class, directing the Notice Program to the Settlement Class, and scheduling a Final Approval Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2). Evolve does not oppose the relief sought in this motion.

## II.    BACKGROUND[2]

### a.  The Litigation

In and around February and May 2024, cybercriminals gained unauthorized access to Defendant's information systems ("Data Incident") and accessed and exfiltrated Plaintiffs' and approximately 18 million class members' Private Information. On or about July 1, 2024, Defendant began notifying individuals whose Private Information may have been compromised in the Data Incident.

Following the announcement of the Data Incident, impacted individuals, including Plaintiffs, filed lawsuits against Evolve as well as several of its fintech partners, alleging that they failed to properly protect customers' Private Information in accordance with Defendant's duties, had inadequate data security, were unjustly enriched by the use of the Private Information, and improperly or inadequately notified potentially impacted individuals. On October 4, 2024, the JPML created an MDL docket related to the Data Incident and transferred 34 putative class action lawsuits filed across the country to Your Honor for coordinated or consolidated pre-trial proceedings. Though Defendant denies all claims of wrongdoing, or liability, the Parties agreed to

---

[2] The background recited herein is taken from the Class Settlement Agreement, § I.

engage a third-party neutral mediator to attempt an early resolution.

### b. Settlement Negotiations and Mediation

On January 31, 2025, Plaintiffs and Evolve participated in a full-day, private mediation before experienced mediator and retired federal magistrate judge, the Honorable Diane M. Welsh with JAMS. In advance of the mediation, the Parties met on numerous occasions and exchanged confidential pre-mediation disclosures as well as informal discovery. The mediation was successful and the Parties agreed in principle on the material terms of the present Settlement to resolve the claims before the Court.

### III.    THE PROPOSED SETTLEMENT

### a. Proposed Settlement Class

Under the terms of the Settlement Agreement, the Settlement Class is defined as "all persons in the United States who provided their Private Information to Evolve, directly or indirectly, and whose Private Information was included in files affected by the Data Incident." Settlement Agreement, ¶ 66. Excluded from the Class are: "(a) all persons who are current or prior governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff." *Id.* Any Class Members, as defined above, will have until thirty (30) days prior to the Final Approval Hearing to opt out of the Settlement. *Id.* ¶¶ 51, 67.

### b. Release

In exchange for the Settlement Class Member Benefits provided under the Settlement Agreement, Plaintiffs and Class Members will release any and all claims (i.e., the Released Claims) against Defendant and each of the Released Parties, as set forth in Section XIII of the Settlement Agreement. *Id.* Section XIII. The Release is tailored to cover all claims that were asserted or that could have been asserted by Class Members related to or arising from the Data Incident. *Id.*

### c.  Compensation to Class Members

The Settlement provides significant relief to participating Class Members. First, Defendant shall pay $11,858,259.98 into a non-reversionary fund ("Settlement Fund"). *Id.* ¶¶ 70, 73. The Settlement Fund will be disbursed in two methods: Documented Loss Payments and Flat Cash Payments. *Id.* ¶ 77. Following the payment of any incentive award, Attorneys' Fees, Costs, and Service Awards, Settlement Administration Costs, and Class Action Fairness Act notice, the Settlement Fund will provide Class Members with the ability to claim *pro rata* cash payments that can be increased "in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund." *Id.* ¶¶ 77-78. Via the Settlement Fund, Settlement Class Members will be eligible to receive a Cash Payment for either claims of documented out-of-pocket expenses up to $3,000 (Cash Payment A – Documented Losses), or for an estimated $20.00 cash payment (Cash Payment B – Flat Cash). *Id.* ¶ 77. Class Members may also elect one year of credit monitoring and identity theft insurance coverage for up to $1,000,000, which represents a value of $110 per Class Member. *Id.* Class Members will have fifteen (15) days before the initial scheduled Final Approval Hearing to submit a claim. *Id.* ¶ 24.

Second, in addition to the cash Settlement Fund, Defendant will engage in certain data and information security measures designed to strengthen Defendant's data security practices and prevent similar data security incidents in the future. *Id.* ¶ 79. These data security commitments directly benefit every Class Member irrespective of whether they submit a Claim Form. Defendant has agreed to provide Class Counsel with a declaration attesting to the estimated total value of the data security commitments, to be submitted to the Court for consideration in connection with Plaintiffs' motion for final approval of the Settlement. *Id.*

### d. Notice Program

The Parties selected Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator, subject to Court approval. *Id*. ¶ 82. Counsel has worked with Kroll on many data breach class actions, and it has proven to be a reliable and affordable settlement administrator. *See* Declaration of J. Gerard Stranch, IV in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl.") ¶ 3.[3] Indeed, Kroll is a nationally recognized settlement administration firm that has handled dozens of similar data breach settlements across the country. Declaration of Kroll ("Kroll Decl.") ¶¶ 2–4.[4] Should the Court approve, Kroll will administer the Notice Program under the terms identified in Sections VII through IX of the proposed Settlement.

Within five (5) days of the entry of the Preliminary Approval Order, Defendant will provide Kroll with a list of Class Members. Settlement Agreement, ¶ 87. Within 30 days following entry of the Preliminary Approval Order, Kroll will initiate the Notice Program, which includes sending Email Notice twice to each Class Member and providing Publication Notice if the Email Notice's reach falls below 90%. *Id.* ¶ 88. The Notice shall include a description of the material terms of the Settlement, directions on how to submit a Claim Form, and other important deadlines and information, including the deadlines to opt-out or object to the Settlement and the date and location of the Final Approval Hearing, among other information. *Id.* ¶ 89. Kroll will also establish a Settlement Website to provide the Class with all relevant information and documents, including the Settlement Agreement, Claims and Notice Forms, and Court orders. *Id.* ¶¶ 43, 71, 90.

The claims process is structured to ensure all Class Members have adequate time to review

---

[3] The Counsel Decl. and its exhibit is attached as **Exhibit 2**.
[4] The Kroll Decl.is attached as **Exhibit 3**.

the terms of the Settlement Agreement, compile documents supporting their claims, and decide whether they would like to participate, opt-out, object, or do nothing. Kroll will be responsible for reviewing the Claim Forms and determining if they are valid, timely, and complete. *Id.* ¶ 84. Should a claim be incomplete or defective, Kroll will notify the Claimant of the deficiencies (with reports to Class Counsel and Defense Counsel) and notify the Claimant that they have until the Claim Form Deadline, or fifteen (15) days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to cure the deficiencies and re-submit their claim. *Id.* ¶¶ 84, 101. Should any Class Member wish to opt out of the Settlement, they must postmark their request to Kroll at the address set forth in the Notice no later than thirty (30) days before the Final Approval Hearing *Id.* ¶¶ 51, 91. Any opt-out request shall: (i) state the Class Member's full name, current address, and signature; and (ii) specifically state his or her desire to be excluded from the Settlement and from the Settlement Class. *Id.* ¶ 91. Failure to comply with these requirements and to timely submit an opt-out request will result in the Settlement Class Member being bound by the terms of the Settlement. *Id.*

Any Class Member seeking to object to the Settlement must mail a letter to Settlement Class Counsel, Defendant's Counsel, the Settlement Administrator, and the Clerk of Court, postmarked no later than thirty (30) days before the Final Approval Hearing. *Id.* ¶¶ 50, 93, . To state a valid objection to the Settlement, a Settlement Class Member must set forth all of the following information in writing: (1) the objector's full name, mailing address, telephone number, and email address (if any); (2) whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection; (3) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (4) the number of times the objector has objected to a class action

settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (6) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (7) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (8) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (9) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (10) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (11) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (12) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 94.

### e.  Fees, Expenses, and Service Awards

Under the terms of the proposed Settlement, Plaintiffs may file a motion for attorneys' fees and costs up to one-third of the Settlement Fund. *Id.* ¶ 112.

Plaintiffs have been dedicated and active participants on behalf of the Class. Counsel Decl.

¶ 10. They actively assisted Class Counsel with their investigation, sat through multiple interviews, and provided supporting documentation and personal information throughout the process to help develop facts relevant to the litigation and the proposed Settlement. *Id.* Class Counsel kept in close contact with Plaintiffs during the litigation through numerous emails and personal telephone calls. *Id*. Plaintiffs reviewed the complaints and the terms of the proposed Settlement Agreement and communicated with their counsel regarding the proposed Settlement. *Id.* Each Plaintiff put their name and reputation on the line for the sake of the Class, and the recovery provided by the proposed Settlement would not have been possible without their efforts. *Id.* ¶ 10. Plaintiffs have been vital in litigating this matter, have been personally involved in the case, and support the proposed Settlement. *Id.*. Thus, in addition to Class Counsel's attorneys' fees and costs, the proposed Settlement provides that Plaintiffs Samantha Walker, Steven Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason Shefa, and Lisa Adewole should be appointed as Class Representatives, subject to Court approval. Settlement Agreement, ¶ 111. Plaintiffs request that they be so appointed. As the Class Representatives, the proposed Settlement provides that they should each receive a $2,500 Award for their service to the Settlement Class, which Class Counsel will request in his Application for Attorneys' Fees, Costs and Service Awards at a later date. *Id.* ¶¶ 16, 111, 113. This amount is consistent with service awards approved in other data breach class action settlements. Payment for Class Representatives' Service Awards will be distributed from the Settlement Fund, but the proposed Settlement is not conditioned upon the Court's award of any Service Awards. *Id*.

## IV.    ARGUMENT

In *Williams v. Vukovich*, the Sixth Circuit outlined the procedure this Court must follow in

order to approve a class action settlement: (1) the court must preliminarily approve the proposed settlement, *i.e.*, the court should determine whether the compromise embodied in the proposed settlement is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the proposed settlement is fair to those affected, adequate and reasonable. 720 F.2d 909, 920–21 (6th Cir. 1983).

Federal Rule of Civil Procedure 23(e) provides that a class action may not be settled without the approval of the court. *See also Thompson v. Seagle Pizza, Inc.,* 2022 WL 1431084, at *3 (W.D. Ky. May 5, 2022). On a motion for preliminary approval, courts recognize a "strong presumption in favor of voluntary settlement agreements" that is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Mullins v. Data Mgmt. Co.*, 2021 WL 2820560, at *4 (S.D. Ohio June 21, 2021) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 589, 594-95 (3d Cir. 2010)). At the preliminary approval stage, the bar to meet the fair, reasonable and adequate standard is lowered. *See, e.g.*, *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020); *and Lott v. Louisville Metro Gov't*, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."). As the Sixth Circuit has explained, a district court should approve a proposed settlement that is "fundamentally fair, adequate and reasonable." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986). Approval of a proposed settlement is committed to the sound discretion of the trial court, *Bailey*, 908 F.2d at 42. Factors relevant to determining whether a proposed settlement is fair, adequate and reasonable include the following "traditional factors" for district courts to consider:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Pelzerv v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016).

### a. The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Requirements of Rule 23(e)(2) and the Factors Considered by the Sixth Circuit for Preliminary Approval

Consistent with Rule 23(e) and its interpreting case law, the proposed Settlement Agreement is fair, reasonable, and adequate and the Court should preliminarily approve it.

### i.  The Proposed Settlement Satisfies the Rule 23 Factors

### 1.  Plaintiffs and Counsel Have Adequately Represented the Class

Pursuant to Rule 23(e)(2)(A), the Court considers whether the class representatives and class counsel adequately represented the class. Here, Plaintiffs, as the putative Class Representatives, have represented the Class admirably. They made themselves available to Class Counsel when necessary, reviewed filings, provided Class Counsel with documents and other evidence, and otherwise helped prosecuted this case diligently. Counsel Decl. ¶ 10.

Class Counsel is an experienced and respected class action litigator with significant experience in data breach cases who negotiated the proposed Settlement on behalf of Plaintiffs. Counsel Decl.¶ 11, Prior to mediation, the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement and Defendant's investigation of the Data Incident. *Id.* ¶ 4. Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Class Members, analyzed the documents and information produced by Defendant in advance of mediation, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this matter, as well as the applicable laws of Tennessee and other

11

relevant jurisdictions. *Id.* ¶ 14. Following the Parties' January 31, 2025 mediation, Class Counsel drafted the proposed Settlement, revised those drafts, and negotiated the details of the final proposed Settlement with Defendant's Counsel. *Id.* ¶ 15. This factor weighs in favor of preliminary approval.

### 2. The Settlement Is the Product of Arm's-Length Negotiations

Pursuant to Federal Rule of Civil Procedure 23(e)(2)(B), the Court must consider whether the proposed Settlement is the product of arm's-length negotiation. As detailed above, the Settlement here was negotiated through Judge Welsh who served as a neutral mediator. Settlement Agreement, ¶ 9. The mediation and subsequent negotiations were undoubtedly hard fought and absent of any collusion. Indeed, the Parties relied on Judge Welsh's assistance to reach the ultimate agreement during the mediation session. *Id.* ¶¶ 9–11. *See Kutzback v. Riviana Foods, Inc.*, 2023 WL 2261417, at *1 (W.D. Tenn. Feb. 27, 2023) (citing *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008), which held that "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"). This factor weighs in favor of preliminary approval.

### 3. The Benefits Provided to the Class are Adequate

In determining whether the benefits provided are adequate, district courts consider "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(A)–(D).

Here, Plaintiffs and Class Counsel are fully aware of the inherent risks, expenses, complexity, and delays associated with data security litigation. Counsel Decl. ¶ 9. The proposed

Settlement is a fair and reasonable result that delivers tangible and immediate benefits to all Class

Members. Indeed, comparing the proposed Settlement here with monetary recoveries obtained for

classes of consumer plaintiffs in other data breach settlements demonstrates the strength of this

Settlement.[5] Furthermore, the Settlement's proposed method of distributing relief to the class is

not unduly burdensome and deters fraudulent claims. The list of Class Members will be provided

by Defendant. Those Class Members may make claims for either Cash Payment A – Documented

Losses or Cash Payment B – Flat Cash, but any claims for Cash Payment A – Documented Losses

will require that they submit reasonable supporting documentation. Settlement Agreement, ¶ 77.

Moreover, the Settlement includes significant injunctive relief for the Class, as it requires Evolve

to implement and maintain enhanced data security measures designed to prevent similar data

security incidents in the future. *Id.* ¶ 79. Finally, Plaintiffs' Service Award and Class Counsel's

attorneys' fees and costs are reasonable and will be subject to Court approval at a later date so that

Class Members will have a fair opportunity to analyze these provisions in determining whether to

---

[5] *See, e.g.*, *In re Google Plus Profile Litig.*, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (approving $7.5 million settlement for 161 million consumers whose personal information was compromised); *Adkins v. Facebook, Inc.*, 2020 WL 6710086, at *2-3 (N.D. Cal. Nov. 15, 2020) (preliminarily approving data breach settlement providing only injunctive relief); *Linnins v. Haeco Americas, Inc. (f/k/a Timco Aviation Services, Inc.)*, 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (approving settlement that included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was allegedly disclosed in a data breach); *Brady v. Due North Holdings, LLC*, No. 17-cv-01313, Final Approval Order and Judgment (Dkt. 65), at *2 (S.D. Ind. Oct. 16, 2018) (approving settlement that provided reimbursement of out-of-pocket expenses of up to $150, $250, $350, or $500, depending on settlement tier); *In re Yahoo! Inc. Security Litig.*, 2019 WL 387322 (N.D. Cal. May 9, 2018) (approving $80 million settlement for a class of 3 billion individuals and recovery for $0.26 per person); *In re Ashley Madison Customer Data Security Breach Litig.*, 2016 WL 1366616, (E.D. Mo. 2018) (approving $11.2 million for a class of 37 million individuals and recovery for $0.30 per person); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-MD-2522, ECF 656 (D. Minn. Dec. 2, 2015) (approving $39 million settlement for a class of 110 million individuals and recovery for $0.35 per person); *In re Sony Gaming Networks and Consumer Data Security Breach Litig.*, 996 F. Supp. 2d 942 (2014) (approving $15 million settlement with a class of 60 million individuals and recovery for $0.25 per person).

opt out or object. Thus, this factor likewise weighs in favor of preliminary approval.

### 4.   Proposed Attorneys' Fees and Costs

Class Counsel has devoted significant time and financial resources to this litigation despite the uncertainties of prevailing on the merits, maintaining class certification, and establishing damages. Class Counsel did not broach the topic of attorneys' fees until after agreeing on all substantive settlement terms with Evolve. Counsel Decl. ¶ 16. By no later than 45 days before the original date set for the Final Approval Hearing, Plaintiffs intend to seek attorneys' fees and costs of up to one-third of the Settlement Fund, subject to Court approval and to be paid from the Settlement Fund. Settlement Agreement, ¶¶ 109, 112. Courts in the Sixth Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable. *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *2 (E.D. Tenn. June 30, 2014) (awarding one-third of the common fund which equated to a lodestar multiplier up to 2.5). Plaintiffs will file an Application for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the original date set for the Final Approval Hearing and in accordance with the Settlement Agreement. Settlement Agreement, ¶ 16.

### 5.   The Settlement Treats Class Members Equitably

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). This requirement can be satisfied even when, as here, the Class Members will be entitled to different amounts based on the benefits they select. *Peck v. Air Evac EMS, Inc.*, 2019 WL 3219150, at *7 (E.D. Ky. July 17, 2019) ("While the class members will receive differing amounts, the amount that each class member will receive is based on the actual

14

number of unpaid overtime hours that each person worked.").

Here, all Class Members are eligible to submit Claim Forms for the same Settlement Class Member Benefits if those benefits apply to them. All Class Members may request the *pro rata* cash payment (Cash Payment B – Flat Cash), all Class Members who can provide documentary evidence of any out-of-expenses fairly traceable to the Data Incident may request reimbursement for those expenses (Cash Payment A – Documented Losses) rather than receiving Cash Payment B, and all Class Members may choose to enroll in Credit Monitoring. Settlement Agreement, ¶¶ 31, 77. Thus, the Settlement ensures that all Class Members are treated equitably in relation to each other.

### ii. The Proposed Settlement Also Satisfies the "Traditional Factors" Considered by the Sixth Circuit

#### 1. Likelihood of Success on the Merits Weighs in Favor of Plaintiff

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). But courts are "not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Plaintiffs and Class Counsel strongly believe that the claims presented in this case are meritorious and that Plaintiffs would prevail at trial. Counsel Decl. ¶ 9. Nonetheless, Plaintiffs and Class Counsel understand the risks and delays associated with prolonged litigation and believe the proposed Settlement benefits here outweigh the risks and delays associated with continued litigation. *Id.* Indeed, if Plaintiffs continued with this litigation in lieu of Settlement, Plaintiffs and

15

Class Members would likely face years of delays in getting access to important Settlement Class Member Benefits. Absent Settlement, Plaintiffs face the specter of protracted litigation concerning Defendant's motion to dismiss and objections to class certification, a summary judgment motion, defending expert opinions, trial, and appeals. Although Plaintiffs and Class Counsel believe in the strength of this case, they understand that these issues would cause significant delay, thus making settlement even more reasonable. Thus, this factor weighs in favor of preliminary approval. Moreover, Plaintiffs are aware that Evolve faces heightened regulatory and litigation risk in connection with other, unrelated matters arising from the bankruptcy of a former key service provider (Synapse), which also weighs in favor of providing Plaintiffs expedient access to their Settlement Class Member Benefits through preliminary approval of this Settlement.

### 2. No Risk of Fraud or Collusion Exists

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Jones v. Varsity Brands LLC,* 2024 WL 5010412, at *6 (W.D. Tenn. Dec. 6, 2024) (quoting *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)*.* Furthermore, "'the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Gokare v. Federal Express Corp.*, 2013 WL 12094870, at *3 (W.D. Tenn. Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). Here, no fraud or collusion existed in the Parties' multi-week settlement negotiations, which were facilitated by a well-qualified mediator. This factor also weighs in favor of preliminary approval.

### 3. The Complexity, Expense, and Duration of Litigation

As courts have recognized, data breach litigation is inherently complex. *See, e.g.*, *Jackson v. Nationwide Retirement Solutions, Inc.,* 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) ("[T]he

technical issues involved in data breach cases are complex."); *In re Wawa, Inc. Data Security Litig.*, 2024 WL 1557366, at \*20 (E.D. Pa. April 9, 2024) ("Data breach litigation is inherently complex."). Data breach cases require significant technology knowledge and testimony from expensive expert witnesses. Counsel Decl. ¶ 17. These cases are made even more complex because courts still struggle with how to analyze these claims and often come to inconsistent conclusions. *Id.* Thus, the complexity and expense required to engage in prolonged data breach litigation also weighs in favor of preliminary approval.

### 4. The Amount of Discovery

Courts also consider the stage of the litigation and amount of discovery exchanged between the Parties. However, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Ditsworth v. P & Z Carolina Pizza*, 2021 WL 2941985, at \*3 (W.D. Ky. July 13, 2021). Here, the Parties agreed to negotiate early resolution of this matter and ultimately agreed to a resolution without the need for expensive and prolonged discovery. Though the Parties have not exchanged formal comprehensive discovery, Class Counsel believes the informal information exchanged between the Parties during and leading up to mediation was more than sufficient to fully understand the relative positions of the Parties, including the strength of the case. Counsel Decl. ¶ 4. Thus, this factor also weighs in favor of preliminary approval.

### 5. Opinion of Class Counsel and Class Representative

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'" *Green v. v. Platinum Restaurants Mid-America LLC,* 2022 WL 1240432, at \*5 (W.D. Ky. Apr. 27, 2022) (quoting *UAW v. Ford Motor Co.*, 2008 WL 4104329, at \*26 (E.D. Mich. Aug. 29, 2008)). Here, "the experienced attorneys on each side, after assessing

the relative risks and benefits of litigation, believe that the settlement is fair and reasonable." *Id.*
Plaintiffs and Plaintiffs' counsel support the Settlement here. Counsel Decl. ¶¶ 7, 9.

### 6. Reaction of Absent Class Members

The reaction of absent Class Members will be an important consideration for the Court in determining whether to grant final approval. Nevertheless, this factor is inapplicable at the preliminary approval stage because the Court has not yet ordered Kroll to provide Class Members with Notice of the Settlement.

### 7. Public Interest

Courts have often espoused "a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Coleman v. Amazon.com, Inc.,* 2025 WL 582495, at *6 (W.D. Tenn. Feb. 21, 2025) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Thus, the strong public interest in favor of settlement weighs in favor of preliminary approval.

### b. Certification of the Settlement Class is Appropriate

### i. The Rule 23(a) Factors are Satisfied Here

Pursuant to Federal Rule of Civil Procedure 23, when granting preliminary approval to a class settlement agreement, the Court must likewise conditionally certify the proposed class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a). Because Plaintiffs seek certification pursuant to Rule 23(b)(3), Plaintiffs must also demonstrate that common questions of law or fact predominate over individual issues in the matter and that a class action is the superior mechanism to adjudicate Plaintiffs'

claims. *Amchem*, 521 U.S. at 615–16. This Court has broad discretion to determine whether certification here is appropriate. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As set forth below, each of the requirements for class certification are satisfied here.

### ii. The Proposed Settlement Class Is Ascertainable

A prerequisite to any Rule 23 action is the actual existence of a "class" that is readily ascertainable. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) ("Rule 23(b)(3) classes must also meet an implied ascertainability requirement."). To satisfy this requirement, a "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (citation omitted).

Here, the proposed Class is readily ascertainable because Class Members will be identified using Evolve's records. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (explaining that "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria… "the subclasses can be discerned with reasonable accuracy using Defendants' electronic records….") (citations omitted). Indeed, Evolve sent data breach notification letters to Class Members following the Data Incident, so it already possesses all the necessary information to readily identify and ascertain the Class.

### iii. The Class Is Numerous

Class certification requires that the proposed class be so numerous that joinder is impractical. Fed. R. Civ. P. 23(a)(1). Here, the size of the class is approximately eighteen million

individuals, which easily satisfies this requirement. *See, e.g.*, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("The United States Court of Appeals for the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement.").

### iv.   Common Questions of Law and Fact Are Present

Rule 23 further requires that the claims present common questions of law or fact. *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). "The commonality test 'is qualitative, rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *In re Am. Med. Sys.*, 75 F.3d at 1080 (internal citation omitted).

Here, myriad common questions of both law and fact exist. This is so because Plaintiffs' and putative Class Members' claims derive from the same Data Incident and allege the same wrongdoing—Evolve's alleged failure to implement reasonable and industry standard cybersecurity safeguards to prevent the Data Incident. Moreover, Plaintiffs' claims present the same legal questions, including whether Defendant owed Plaintiffs and the Class a duty of care to implement reasonable cybersecurity measures and whether Defendant breach that duty here. Thus, common questions of both law and fact exist.

### v. Plaintiff's Claims Are Typical of the Class

As putative Class Representatives, Plaintiffs' claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Plaintiffs satisfy the typicality requirement here because their claims arise out of the same Data Incident as other putative Class Members and present the same legal theories as would be presented if each Class Member filed their own individual cases. *Beattie*

*v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (holding that the claims need not be identical but merely "arise from the same course of conduct"). Because Plaintiffs' claims arise out of the same Data Incident, the typicality requirement is met here.

### vi.   Class Counsel and Class Representatives Are Adequate

Here, Class Representatives and Class Counsel fairly and adequately represent the Class. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. Both criteria are satisfied here.

First, Plaintiffs have common interests with the putative Class Members in that they were all a part of the same Data Incident, all received notification letters from Defendant, and present common questions of law and fact that are applicable to all Class Members. Moreover, Plaintiffs have diligently prosecuted this action on behalf of the Class and there is no evidence of any collusion among the Parties, nor could there be in this case. Counsel Decl. ¶ 18; *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 486 (W.D. Tenn. July 1, 2011) (adequacy satisfied where "[t]he interests of the absent class members are the same as those of the named plaintiffs because all plaintiffs were allegedly injured in the same manner by the same actions of the same defendant. Additionally, there is no suggestion that the named plaintiffs will receive a windfall at the expense of any absent class member."). Thus, Plaintiffs have and will continue to adequately represent the Settlement Class subject to the Court's decision to appoint them as Class Representatives.

Second, Plaintiffs have retained knowledgeable and well-qualified counsel who have

successfully prosecuted many class actions, including data breach class actions. Counsel Decl. ¶ 11. Class Counsel has adequately represented the Class here. Rule 23(g) sets forth several criteria for determining the adequacy of Class Counsel. Under Rule 23(g), courts consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Here, Class Counsel has investigated this matter thoroughly, including by researching the factual background and potential claims and defenses. *Id.* ¶ 11. Class Counsel has significant experience in consumer class litigation and specifically has led or been heavily involved in numerous data breach class actions around the country. *Id*. Class Counsel's significant experience has afforded him and his team deep knowledge of the claims and defenses common in data breach litigation. *Id*. Class Counsel has ample resources to prosecute this action and never relies on outside funding. *Id.* ¶ 19. Thus, Class Counsel adequately represents the Class.

### vii.   The Rule 23(b) Factors are Satisfied Here

Plaintiffs seek certification of this settlement class under Rule 23(b)(3). After Plaintiffs satisfy Rule 23(a), this Court may certify a Rule 23(b)(3) class if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *Ham*, 275 F.R.D. at 482. "[A] court is required to find that common issues predominate in a Rule 23(b)(3) class because '[i]t is only where this predominance exists that economies can be achieved by means of the class-action device.'" *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002) (citation omitted); *see also Amchem*, 521 U.S.

at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). "Predominance is usually decided on the question of liability, so that if the liability issue is common to the class, common questions are held to predominate over individual ones." *Weinberg v. Insituform Techs., Inc.*, 1995 WL 368002, at *7 (W.D. Tenn. Apr. 7, 1995). Both of these requirements are easily satisfied here.

### viii.   Common Issues Predominate

The Court's inquiry into predominance requires the Court "to assess the legal or factual questions that qualify each class member's case as a genuine controversy . . . and assess whether those questions are subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness*, 863 F.3d at 468. Predominance is met if a *single* common factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Here, common questions of law and fact predominate because Plaintiffs' and Class Members' claims all arise from the exact same Data Incident, the same notification concerning the Data Incident, the same alleged failures to implement reasonable industry cybersecurity standards that resulted in the Data Incident, the same duty Plaintiffs allege Evolve owed to them and Class Members to safeguard their sensitive information, and the same types of harms and damages from the Data Incident. Thus, common issues predominate here.

### ix.   A Class Action Is the Superior Means of Resolution

Next, the superiority inquiry "requires a plaintiff to show "'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Fam. Sols. of Ohio, Inc.*, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022) (quoting Fed. R. Civ. P. 23(b)(3)).

23

"The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Here, individual adjudication of these cases would be virtually impossible. Indeed, individual adjudication would likely mean the individual filing of potentially over 18 million cases, which would drain judicial and advocate resources. Thus, a class action is a superior mechanism for Plaintiffs and putative Class Members to seek legal redress here.

### c. The Proposed Notice Program Is Reasonable and Provides Ample Due Process

Finally, the Court should grant preliminary approval to the proposed Settlement because the proposed Notice Program provides more than sufficient due process to absent class members. In any class action, notice to a class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (internal quotation marks and citations omitted). "[A]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (internal quotation marks and citations omitted).

Here, the Notice Program detailed above provides absent class members two email notices, a website dedicated to providing information to Class Members, Publication Notice in the event that the Email Notice reach rate falls below 90%, and affords an opportunity to make claims, objections, and opt-out. Similar direct notice programs have reached well in excess of ninety percent of class members, and the same outcome is anticipated here. Kroll Decl. ¶ 5; *see also In re Restasis Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (observing that "a notice plan that reaches between 70 and 95 percent of the class is reasonable[,]" and endorsing a notice

plan with 80 percent expected reach). As required by Rule 23, the proposed Long Form Notice "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The Long Form Notice here also: describes the terms of the proposed Settlement, including requests for Service Awards for the Class Representatives and for an award of attorneys' fees and reimbursement of costs; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval Hearing and the procedures for appearing at the hearing; and provides contact information for Class Counsel and the Settlement Administrator. Settlement Agreement, Ex. 4. The Notices inform Class Members of the deadlines for objecting to the Settlement and excluding themselves from the Class and the deadlines themselves are reasonable. The Notices use plain language and are, thus, easy to understand. Should Class Members have any questions, the proposed Settlement requires Kroll to establish a toll-free telephone number to answer their questions. Settlement Agreement, ¶ 84. Thus, the proposed Notice Program provides ample due process.

### d. The Court Should Provisionally Appoint Class Counsel

Plaintiffs request that the Court appoint J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel; Gary Klinger, Linda Nussbaum, Jeff Ostrow, James Pizzirusso, Scott Poynter and Lynn Toops as Members of the Executive Committee; and Frank Watson of Watson Burns, PLLC as Liaison Counsel for the Settlement Class. The Court previously

designated these individuals as Interim Class Counsel, ECF No. 46, and the considerations supporting their previous appointments weigh in favor of further appointing them here. Class Counsel, the Members of the Executive Committee, and Liaison Counsel have vigorously represented the interests of Plaintiffs and Class Members at all times since the inception of this litigation. Counsel Decl. ¶ 20. Considering their work in this litigation, their collective expertise and experience in handling similar actions, and the resources they committed to representing the Class, Class Counsel, the Members of the Executive Committee, and Liaison Counsel, should be appointed to the respective roles for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

### e. The Court Should Provisionally Appoint Class Representatives

The Court should likewise provisionally appoint the named Plaintiffs as Class Representatives. As noted above, they have all prosecuted this action admirably and have been available to assist Counsel at all times requested. Because they have represented the Settlement Class well, they should be named Class Representatives. Counsel Decl. ¶ 10.

### f. Proposed Schedule for Final Fairness Hearing

Plaintiffs propose the following schedule and proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Notice Date | No later than 30 days after entry of Preliminary Approval Order |
| Deadline for Class Counsel's Application for Fee Award and Costs (and Service Awards) | No later than 45 days before the original date set for the Final Approval Hearing |
| Opt-Out and Objection Deadline | 30 days before Final Approval Hearing |
| Claims Deadline | 15 days before Final Approval Hearing |
| Deadline for Motion in Support of Final Approval of Settlement | No later than 45 days before the original date set for the Final Approval Hearing |
| Final Approval Hearing | No earlier than 135 days after entry of Preliminary Approval Order |

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) granting preliminary approval to the Settlement; (2) certifying the Class for the purpose of the Settlement pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (3) ordering the Settlement Administrator to direct and issue notice to the Class under the terms of the Settlement Agreement; (4) appointing Samantha Walker, Steven Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason Shefa, and Lisa Adewole as Class Representatives for the purpose of the Settlement; (5) appointing J. Gerard Stranch, IV as Lead Counsel; Gary Klinger, Linda Nussbaum, Jeff Ostrow, James Pizzirusso, Scott Poynter and Lynn Toops as Members of the Executive Committee; and Frank Watson of Watson Burns, PLLC as Liaison Counsel for the Settlement Class; and (6) entering the above-referenced proposed Schedule.

Dated: April 1, 2025

Respectfully submitted by,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
Grayson Wells (BPR 039658)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*Lead Class Counsel*

Gary M. Klinger
**MILBERG       COLEMAN       BRYSON
GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Lynn A. Toops
Amina Thomas
**COHEN & MALAD LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 W. Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Linda Nussbaum
**NUSSBAUM LAW GROUP P.C.**
1133 Avenues of the Americas, 31st Floor
New York, NY 10036
Tel: (917) 438-9102
lnussbaum@nussbaumpc.com

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
jpizzirusso@hausfeld.com

Scott Poynter
**POYNTER LAW GROUP**
4924 Kavanaugh Boulevard
Little Rock, AR 72207
Tel: (501) 812-3943
scott@poynterlawgroup.com

*Members of the Class Counsel Executive
Committee*

Frank L. Watson, III
**WATSON BURNS, PLLC**
253 Adams Avenue
Memphis, TN 38104
Tel: (901) 529-7996
fwatson@watsonburns.com

*Class Liaison Counsel*

***Attorney for Plaintiffs and the Putative Class***

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document *MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT* was electronically filed on April 1, 2025, using the Court's Electronic Filing System, which will send a Notice of Electronic Filing to counsel in the CM/ECF system.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)